## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 24-10120-smr |
| TEXAS REIT, LLC, | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |
| WCW HOUSTON PROPERTIES, LLC, | § | |
| | § | |
| Plaintiff, | § | Adversary No. 24-01045-smr |
| | § | |
| v. | § | |
| | § | |
| TEXAS REIT, LLC; DALIO HOLDINGS I, LLC, and DALIO HOLDINGS II, LLC | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S MOTION TO DISMISS (I) DALIO HOLDINGS I, LLC'S AND DALIO HOLDINGS II, LLC'S ORIGINAL COUNTERCLAIM, DOCKET NO. 84; AND (II) TEXAS REIT, LLC'S ORIGINAL COUNTERCLAIM, DOCKET NO. 71**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.

IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY**

Plaintiff WCW Houston Properties, LLC ("WCW") files this Motion to Dismiss (I) Dalio Holdings I, LLC's and Dalio Holdings II, LLC's Original Counterclaim, Docket No. 84; and (II) Texas REIT, LLC's Original Counterclaim, Docket No. 71 under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as made applicable to this Adversary under Federal Rule of Bankruptcy Procedure 7012(b).[1]

## <u>Summary of Relief Requested</u>

WCW requests that the court enter an order dismissing the Defendants' counterclaims because 1) they violate 28 U.S.C. § 1738 as they seek to violate a state appellate court's judgment dictating the scope of the issues to be determined in this case; and 2) neither Defendant has pleaded a viable claim for equitable subordination as neither have pleaded harm to the debtor or its creditors.

WCW further seeks an order dismissing the Debtor's claims for additional reasons.  First, the Debtor's claim for real estate fraud is subject to an absolute bar under *res judicata*.  The Debtor asserted identical claims based on the same facts in the underlying state court case. WCW obtained summary judgement on this claim, and this part of the judgment was affirmed by the court of appeals and not remanded. Second, the Debtor's claim for real estate fraud is barred by limitations as the Debtor's claim for real estate fraud is subject to a four-year statute of limitations. The

---

[1] This same document is being filed twice because there are overlapping issues.  Counsel for WCW attempted to link the filing to the respective counterclaim.

Debtor alleges WCW committed fraud in 2018, and the Debtor did not file its counterclaims until 2024.

WCW further seeks dismissal of Dalio Holdings I, LLC's ("Dalio") claim for equitable subordination because Dalio lacks standing to assert such a claim. Dalio seeks equitable subordination of WCW's claim based upon a general injury to the Debtor or its unsecured creditors rather than a particularized injury to itself. Dalio lacks standing to assert such a claim as a matter of law.

## Background

This case was originally filed on May 25, 2017, in the District Court of Harris County, Texas 151st Judicial District (the "State Court Case"). Texas REIT, LLC ("Texas REIT") was the original defendant at the time of filing.

On May 31, 2018, the Debtor filed its Cross-Plaintiff's Original Petition, and Verified Application for Temporary Restraining Order And For Temporary And Permanent Injunctions. *See* Docket No 73, Part 2 p. 14-25. In this pleading, Texas REIT accused WCW, its manager Steve Wu, and a litany of other individuals, of participating in a scheme in which Mr. Wu used the entities Fondren Dashwood LLC and the Wu Family Trust to make false offers to purchase the Debtor's property to obtain the Debtor's confidential information, such as the identity of the Debtor's lienholders. The Debtor further claims that WCW improperly used this confidential information to acquire the second priority lien and then attempt to foreclose that lien.

On July 1, 2022, WCW filed a motion for summary judgment on all of the Debtor's counterclaims against it in the State Court Case. *See* Docket No. 80, Part 2, p. 1-19.

On July 19, 2022, the Debtor filed its response to WCW's Motion for Summary Judgment. *See* Docket 81, Part 2, p. 66-79.

On July 30, 2022, the state court entered interlocutory summary judgment in favor of WCW and against the Debtor on all of the Debtor's counterclaims. *See Docket* 81, Part 2, p. 530.

On August 7, 2022, the state court entered final summary judgment on all claims in favor of WCW and against the Debtor. *See* Docket 81, Part 2*,* p. 558-577.

On November 4, 2022, the Debtor filed its notice of appeal. *See* Docket 81, Part 2, p. 721-723

On February 6, 2024, Texas REIT filed for bankruptcy protection under Chapter 11 of Title 11 of the United States Code.

On June 6, , 2024, the Fourteenth Court of Appeals issued an order partially reversing the judgment of the trial court and remanding the case for further proceedings (the "Remand Order"). *See* Docket 83, Part 2, p. 108. The court limited its remand to the amount of WCW's claim against the Debtor and whether to subordinate the debt of Dalio Holdings I, LLC to the debt of WCW. *Id.* Notably, the court's judgment ***did not*** remand the portion of the case dealing with the Debtor's counterclaims. Indeed, the appellate court ***affirmed*** all other aspects of the trial

24-01045-smr  Doc#86  Filed 01/06/25  Entered 01/06/25 17:30:02  Main Document  Pg 5 of 20

court's judgment and severed them from the remanded issues. Accordingly, the trial court's judgment is final and non-appealable as it relates to the counterclaims

On July 5, 2024, WCW removed this case to the Bankruptcy Court for the Southern District of Texas, Houston Division in Adversary No. 24-03136.

On August 8, 2024, the Bankruptcy Court in the Southern District transferred the Adversary to this court.

On November 18, 2024, WCW filed its Original Complaint in this Adversary. With very few exceptions, WCW's pleadings in the Adversary mirror its pleadings in the State Court Case.

On December 17, 2024, the Debtor filed its Answer in this Adversary. The Answer contains counterclaims. This counterclaim blatantly reasserts the Debtor's claim against WCW for real estate fraud which the trial court in the State Court Case had already decided in WCW's favor. The Debtor also asserts a claim to equitably subordinate WCW's claim to all other secured claims based upon the same allegation of WCW committing fraud through the use of false offers to purchase the Debtor's property through Fondren Dashwood and the Wu Family Trust.

Also on December 17, 2024, Dalio filed its Answer in this Adversary. Dalio also asserts a claim for equitable subordination based upon the same allegations contained in the Debtor's counterclaims.

## Arguments and Authorities

The court should enter an order dismissing the Defendants' counterclaims for several reasons. First, the Defendants' counterclaims should all be dismissed because

PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS                    PAGE 5
HOU 6333648.2

they exceed the scope of this Adversary as prescribed by the order remanding this case to the state trial court prior to removal of the case to this court.  Thus, the Defendants' claim each violate the Full Faith and Credit Act.  Second, the Defendants' claims fail to provide allegations sufficient to establish a claim for equitable subordination of WCW's secured claim because they fail to establish any harm to the Debtor or its unsecured creditors.  Instead, the Defendants allege only harm that could have occurred but did not.  Third, the Debtor's counterclaim for real estate fraud is barred by both *res judicata* and the relevant statute of limitations.  Finally, the court should dismiss Defendant Dalio's claim for equitable subordination as it lacks standing to assert it.  For these reasons, the court should dismiss each of the Defendants' counterclaims.

I.  **The Federal Rules of Civil and Bankruptcy Procedure provide for dismissal of claims for which the trial court lacks subject matter jurisdiction, or which fail to state a cause of action.**

The Federal Rules of Civil Procedure provide for dismissal of claims for either lack of subject matter jurisdiction or for failure to state a claim.  More specifically, Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of claim upon motion when the trial court lacks subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Similarly, Rule 12(b)(6) provides for dismissal of a claim when the plaintiff's complaint fails to state a cause of action.  FED. R. CIV. P. 12(b)(6).  Both rules are made applicable to adversary proceedings under Federal Rule of Bankruptcy Procedure 7012.  FED. R. BANKR. P.  7012(b).

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the

evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.' " *Krim v. pcOrder.com, Inc.,* 402 F.3d 489, 494 (5th Cir. 2005). In weighing the evidence, the court may rely on the complaint by presuming the allegations in the complaint to be true or by supplementing the complaint with undisputed facts. *Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir. 2001). The party asserting jurisdiction must carry the burden of proving the existence of subject matter jurisdiction to survive a Rule 12(b)(1) motion to dismiss. *Randall D. Wolcott, M.D., P.A. v. Sebelius,* 635 F.3d 757, 762 (5th Cir. 2011). The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *United States v. City of New Orleans*, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232-33 (5th Cir. 2009); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

II. **The Court should dismiss all of the Defendants' counterclaims because they exceed the scope of the remand order and thus violate the Full Faith and Credit Act.**

The court should dismiss each of the Defendants' counterclaims because they exceed the scope of the remand order issued by the Texas Fourteenth Court of Appeals prescribing a remand of certain limited issues. The Full Faith and Credit Act prohibits this and effectively divests the court of subject matter jurisdiction.

The Full Faith and Credit Clause of the Constitution and its enabling statute, 28 U.S.C. § 1738, "create[ ] a rule of decision to govern the preclusive effect of final, binding adjudications from one state court or tribunal when litigation is pursued in another state or federal court." *Adar v. Smith,* 639 F.3d 146, 151 (5th Cir. 2011) (*en banc*). They "require[ ] federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Donley v. Hudsons Salvage, L.L.C.,* 517 Fed.Appx. 216, 220 (5th Cir. 2013) (*per curiam*) (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 466 (1982)). The preclusive effect given to a state court judgment is determined by reference to the preclusion law of the state that rendered the judgment. *Id.*

The Remand Order limits the scope of the trial in this case. This is largely because the Debtor did not seek to reverse the trial court's judgment on its counterclaims. *See* Debtor's Appellate Brief attached as **Exhibit 1**. Consequently, when the Fourteenth Court of Appeal issued the Remand Order it expressly did not remand the counterclaims:

> This cause, an appeal from the judgment in favor of appellee, WCW Houston Properties, LLC, signed, August 7, 2022, was heard on the appellate record. We have inspected the record and find the trial court erred in finding damages on appellee's breach-of-note claim and of equitable subordination of Dalio Holdings I, LLC's lien to appellee's lien. We therefore order that the portions of the judgment that awarded damages and equitable subordination are **REVERSED** and ordered severed and **REMANDED** for proceedings in accordance with this court's opinion.
>
> Further, we find no error in the remainder of the judgment and order it **AFFIRMED**.

*See* Docket 83, Part 2, p. 108. Indeed, the Court of Appeals ***affirmed*** all issues other than the amount of WCW's damages and whether Dalio's claim should be equitably subordinated. *Id.*

The Remand Order is a valid order of the state court. Accordingly, it is entitled to full faith and credit under 28 U.S.C. 1738. The Defendants' counterclaims exceed the scope of the Remand Order. The court therefore lacks subject matter jurisdiction to consider these counterclaims. Accordingly, the court should dismiss each of the Defendants' counterclaims.

## III. The court should dismiss the Debtor's claim for real estate fraud because it is barred by both *res judicata* and the statute of limitations.

The court should dismiss the Debtor's claim for fraud in a real estate transaction because it is barred by both *res judicata* and the relevant four-year statute of limitations.

### A. The Debtor's claim for real estate fraud is barred by res judicata.

The Debtor's claim for fraud in a real estate transaction is indisputably barred by *res judicata*. In the State Court Case, the Debtor specifically pled a claim for real

estate fraud based upon WCW's alleged attempt to acquire the Debtor's confidential information through false offers to purchase its property:

> 25. Defendant/Cross-Plaintiff TRL would show that WCW failed to give Defendant/Cross-Plaintiff all offsets and credits and improperly calculated Defendant/Cross-Plaintiff's indebtedness. Additionally, Cross-Defendants Steven Wu, Brad E. Porter, Liem Dang and Steven Wu conspired against Plaintiff to rob it of the equity in the Property by making false offers to buy the Property for the purpose of obtaining confidential and proprietary information, including rent rolls, and other financials used to assess the value the property and subsequent investments, of Cross-Plaintiff and then use that information to an unfair advantage over Cross-Plaintiff by buying the second lien position.

> **Fraud In A Real Estate Transaction**
>
> 30. Cross-Plaintiff would show that one or more of Cross-Defendants made a false representation of past or existing material fact; the false representation or promise was made in order to induce Cross-Plaintiff to enter into a contract; Cross-Plaintiff relied on the false representation or promise and entered into the transaction; and the reliance caused Cross-Plaintiff injury. Specifically, WCW made false representations to Cross-Plaintiff of WCW's intent to purchase the real property with the intent to obtain confidential financial information, for example, the names of the lienholders, but their real intent was to contact the lienholders directly, purchase both existing liens on the real property and foreclose on the property and obtain the property for millions less than their offer to purchase. PAccordingly, Cross-Plaintiff seeks to recover its damages in an amount within the jurisdictional limits of this Court for Fraud in a Real Estate Transaction.

*See* Docket No 73, Part 2 p. 14-25..

These are the very same allegations contained in the Debtor's counterclaim:

> 66.  In response to such offer, TREIT provided the Wu Family trust with confidential, non-public information regarding the real property, including rent rolls, amounts owed to lienholders and contract information for lienholders.
>
> 67.  On or about February 12, 2018, Ali Choudhri submitted the Commercial Contract to Ali Mokaram, a 30% member in TRET for approval.  Mr. Mokaram's lawyer, Scott Funk, instructed Mr. Choudhri not to accept any offer without the express consent of both Mr. Mokaram and Osama Abdulatif.
>
> 68.  On or about April 14, 2018, The Wu Family Trust submitted an offer to TREIT to purchase Debtor's real property for $10,500,000. This offer was substantially lower than the previous offers submitted by Mr. Wu.
>
> 69.  TREIT negotiated an agreement to purchase the ASI position for $1 million.
>
> 70.  Rather than proceeding with the purchase of the property, Plaintiff WCW took the information provided and used it to acquire the second lien note on the property held by Architectural Services International, LLC  ("ASI") which occurred on or about May 5, 2018.  Plaintiff WCW also attempted to acquire the first lien held by International Bank of Commerce.  However, International Bank of Commerce sold its first lien to Dalio I Holdings, LLC.

*See* Debtor's Original Answer and Counterclaim at p. 5.

This claim has been fully and finally litigated in WCW's favor.  On July 1, 2022, WCW filed a motion for summary judgment on all of the Debtor's counterclaims against it in the State Court Case.  *See* Docket 80, Part 2, p. 1-19.  This expressly included the Debtor's claim for fraud.  *Id* p 7-11.  The trial court granted WCW summary judgment on all of the Debtor's counterclaims on July 30, 2022:

> ## INTERLOCUTORY SUMMARY JUDGMENT
>
> The court, having considered the Motion for Summary Judgment On Texas REIT, LLC's Counterclaims filed by the Plaintiff WCW Houston Properties, LLC (the "Motion"), and any response filed by Texas REIT, LLC, find that the Motion should be granted.  Accordingly, it is ORDERED that the Motion is GRANTED.
>
> It is FURTHER ORDERED that Texas REIT, LLC shall take nothing from its claims against WCW Houston Properties, LLC in this lawsuit.

*See* Docket 81, Part 2, p. 530.  The trial court affirmed its decision in a final judgment in favor of WCW on August 7, 2022.  *See* Docket 81, Part 2, p. 558-577.

After this judgment, the Debtor filed a notice of appeal.  *See* Docket 81, Part 2, p. 721-723.  However, on appeal, the Debtor did not even attempt to obtain reversal of the judgment as it relates to its counterclaims.  *See* Exhibit 1.  Consequently, when the Fourteenth Court of Appeal issued its order partially reversing and remanding the State Court Case, it expressly did not remand the counterclaims:

> This cause, an appeal from the judgment in favor of appellee, WCW Houston Properties, LLC, signed, August 7, 2022, was heard on the appellate record. We have inspected the record and find the trial court erred in finding damages on appellee's breach-of-note claim and of equitable subordination of Dalio Holdings I, LLC's lien to appellee's lien. We therefore order that the portions of the judgment that awarded damages and equitable subordination are **REVERSED** and ordered severed and **REMANDED** for proceedings in accordance with this court's opinion.
>
> Further, we find no error in the remainder of the judgment and order it **AFFIRMED**.

*See* Docket 83, Part 2, p. 108.  Indeed, the Court of Appeals ***affirmed*** all issues other than the amount of WCW's damages and whether Defendant Dalio's claim should be equitably subordinated.  *Id.*

The Debtor's counterclaim seeks to relitigate a claim that is subject to an absolute bar from *res judicata*.  The Debtor was a party to, and actively participated in the adjudication of this claim.  Accordingly, it cannot claim it was unaware of the state court judgment.   The court should therefore dismiss the Debtor's fraud claim.

B.    *The Debtor's fraud claim is barred by the statute of limitations.*

The court should dismiss the Debtor's fraud claim because it is barred by the statute of limitations.  Indeed, the Debtor's fraud claim is subject to a four-year statute of limitations and the Debtor has asserted claims based on transactions that its own pleadings allegedly occur at least six years ago.

The Debtor's fraud claim is subject to a four-year statute of limitations. Statutory fraud under Section 27.01 of the Texas Business & Commerce Code, which is often referred to as "fraud in a real estate transaction" is governed by a four-year statute of limitations.  *See Val-Com Acquisitions Trust v. Citimortgage, Inc.,* 2010 WL 40647901 *3 (N.D. Tex 2010)("as to plaintiff's claim for fraud in a real estate transaction pursuant to section 27.01 of the Texas Business and Commerce Code, such a claim is governed by a four-year statute of limitations."); *see also Ford v. Exxon Mobil Chem. Co.,* 235 S.W.3d 615, 617 (Tex.2007) (applying four-year limitations period to claims under Tex. Bus. & Com. Code § 27.01).  Similarly, common law fraud is also subject to a four-year statute of limitations.  *Sivertson v. Citibank, N.A.,* 390 F.Supp. 769, 782 (E.D. Tex. 2019)("the statute of limitations for a common law fraud claim is four years"); *see also* TEX. CIV. PRAC. & REM. CODE 16.004 (a)(4).

The Debtor's own pleadings establish that its fraud claim is obviously time-barred.  The Defendant's counterclaim allege that WCW committed its fraudulent acts between January 19, 2018 and April 14, 2018.  *See* Debtor's Answer, ¶¶ 66-70. Accordingly, the Debtor's cause of action would become barred by April 14, 2022.  The Debtor filed its counterclaims in this case in December 2024.  Accordingly, the

Debtor's fraud claim is barred by the statute of limitations. The court should therefore dismiss the Debtor's fraud claim.

IV.    **The Debtor's Counterclaim fails to state a cause of action for fraud in a real estate transaction.**

The court should dismiss the Debtor's claim for fraud in a real estate transaction because it fails to state a claim for fraud in a real estate transaction.

Section 27.01(a) of the Texas Business and Commerce Code creates a statutory cause of action for fraud in a real estate transaction. *See* TEX. BUS. & COM. CODE § 27.01(a). *Tukua Invs., LLC v. Spenst*, 413 S.W.3d 786, 796 (Tex. App.—El Paso 2013). Fraud in a real estate transaction occurs if: (1) a person makes a false representation of a past or existing material fact in a real estate transaction to another person for the purpose of inducing the making of a contract; and (2) the false representation is relied on by the person entering into the contract. *Id.* A "transaction" occurs when there is ***a sale or a contract to sell real estate*** or stock between the parties. *See Nolan,* 577 S.W.2d at 556; *Burleson,* 27 S.W.3d at 611.

The Debtor's claim fails as a matter of law because it does not allege that WCW fraudulently induced the Debtor into a contract for the sale of real estate or stock. Instead, the Debtor alleges that third parties supposedly controlled by WCW, induced the Debtor into a contract in which the Debtor provided WCW confidential information regarding its property. *See* Debtor's Counterclaims ¶¶ 73. Nowhere does the Debtor allege that WCW induced it into a contract for or the actual sale of real property or stock. Accordingly, the Debtor's Counterclaims fail to state a cause of

action for fraud in a real estate transaction. Accordingly, the court should dismiss this claim with prejudice.

**V.** **The Defendants' Counterclaims for Equitable Subordination Fail Under Rule 12(b)(6) as both Defendants fail to plead how WCW's alleged conduct created any harm to the Debtor or its creditors.**

The court should dismiss the claims for equitable subordination of both the Debtor and Dalio because both fail to articulate any harm caused to the Debtor or its unsecured creditors. As this is a vital element of a claim for equitable subordination, the court should dismiss these claims under Rule 12(b)(6).

The elements of equitable subordination in the Fifth Circuit are: (1) the claimant must have engaged in inequitable conduct; (2) the misconduct must have resulted in injury to the creditors or conferred an unfair advantage to the claimant; and (3) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code. *See Wooley v. Faulkner (In re SI Restructuring, Inc.)*, 532 F.3d 355, 360 (5th Cir. 2008). Although this may appear broad on its face, the Fifth Circuit has been circumspect in its application. Indeed, the Fifth Circuit has largely confined equitable subordination to three general paradigms: (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors. *Matter of U.S. Abatement Corp.*, 39 F.3d 556, 561 (5th Cir. 1994)

Further, "[e]quitable subordination is remedial, not penal, in nature, and in the absence of actual harm, equitable subordination is inappropriate." *Id.* at 361. Equitable subordination does ***require some level of actual harm to the Debtor***

***and its unsecured creditors***. *See id.* at 361-62; *see also Smith v. Assocs. Comm. Corp. (In re Clark Pipe & Supply Co., Inc.),* 893 F.2d 693, 700 (5th Cir. 1990)(emphasis added). Indeed, the Fifth Circuit has repeatedly limited equitable subordination claims by narrowly tailoring the remedy to the extent of the alleged injury. *In re SI Restructuring, Inc.,* 532 F.3d at 360–61. "[A] claim should be subordinated only to the extent necessary to offset the harm which the debtor or its creditors have suffered as a result of the inequitable conduct." *Id.* (citing *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 701 (5th Cir.1977).

The Defendants' counterclaims for equitable subordination first fail because they fail to allege any actual harm to the Debtor or its unsecured creditors. The Defendants contend that WCW acquired secured debt against the Debtor's property and then attempted to foreclose on the Debtor's property. *See* Debtor's Counterclaim ¶ 72; *see also* Dalio's Counterclaim ¶ 15. The Defendants further contend that WCW offered an inflated payoff amount during its attempt to foreclose. *Id.*

This fails to establish any harm to the Debtor or its unsecured creditors. All the Defendants have alleged is that WCW acquired a secured debt (the "ASI Debt") from a third-party Architectural Services International, LLC ("ASI"), and then sought unsuccessfully to foreclose on this debt. But this transfer of a claim from one party to another does not change the amount owed only to whom it is owed. Put another way, after WCW acquired the ASI debt, the Debtor owed to WCW what it previously owed to ASI. This simple transfer causes no injury to the Debtor or its creditors.

The Defendants next allege that WCW posted the Debtor's property for foreclosure and then demanded more than the amount owed on the ASI Debt. But the Defendants fail to establish any harm that occurred from this alleged conduct. The Defendants do not allege that the Debtor paid WCW more than it owed; indeed, they do not allege the Debtor paid any amount to WCW. Nor do they allege that WCW foreclosed on the Debtor's property or that the Debtor could have paid off this secured claim had WCW demanded what was actually owed. In short, the Defendants allege behavior of WCW that could have caused harm had WCW actually foreclosed, but they entirely fail to plead that WCW's unsuccessful attempt to foreclose caused the Debtor any harm whatsoever.

The Defendants' counterclaims further fail because it does not set forth any of the circumstances in which the Fifth Circuit has permitted equitable subordination of a claim. The Defendants do not allege WCW was a fiduciary of the Debtor who misused it position. They do not allege that WCW controlled the Debtor to the disadvantage of other creditors or that WCW actually defrauded other creditors. Instead, the Defendants do no more than allege that WCW purchased the ASI Debt and then attempted (unsuccessfully) to foreclose for more than the amount owed. As these facts fail to establish the types of inequitable conduct that justify equitable subordination, the court should dismiss these claims.

## VI.      **The court should dismiss Dalio's claim for equitable subordination because it lacks standing to assert a claim for a general injury to the Debtor or its unsecured creditors.**

The court should dismiss Dalio's claim for equitable subordination because it alleges, at most, a general injury to the Debtor, and Dalio lacks standing to seek

subordination for general harm to the Debtor rather than specific harm caused to itself.

The Fifth Circuit has repeatedly limited equitable subordination claims by narrowly tailoring the remedy to the extent of the alleged injury. *In re SI Restructuring, Inc.,* 532 F.3d at 360–61. Based on this jurisprudence, a court cannot afford a general subordination remedy for a subordination claim based on individualized injuries or an individualized subordination remedy for a subordination claim based on general injuries. *In re Andrews,* No. 94-21308, 2009 WL 1076831, at *7 (Bankr. S.D. Tex. Apr. 2, 2009). Thus, courts agree that a creditor asserting equitable subordination must have suffered some particularized injury to satisfy the standing requirement. *In re Waggoner Cattle, LLC,* No. 18-20126-RLJ-11, 2019 WL 469367, at *8 (Bankr. N.D. Tex. Feb. 6, 2019).

Dalio's counterclaim fails to plead any particularized injury, and thus Dalio lacks standing to assert that claim. Indeed, Dalio does not allege that it suffered any injury whatsoever in its counterclaims. Dalio does contend that WCW made an offer to purchase its property. This is likely in error, as the rest of its pleadings recognize that the Debtor owns real property and Dalio has a first priority lien against that property. Regardless, Dalio does not allege that it suffered any injury from WCW's conduct, and it is further difficult if not impossible to conceive how any act of WCW, as the holder of a lien junior to that held by Dalio, could harm Dalio in any way. Accordingly, Dalio has failed to plead facts sufficient to establish standing. The court should therefore dismiss Dalio's equitable subordination claim under Rule 12(b)(1).

## Conclusion

Based on the foregoing, WCW Houston Properties, LLC requests that the court enter an order 1) dismissing each of the Defendants' counterclaims; and 2) granting WCW all other relief to which it is justly entitled.

Dated:  January 6, 2025

Respectfully submitted,

**HOWLEY LAW PLLC**

*/s/ Eric Terry*
**Eric Terry**
Texas Bar No.  00794729
**Tom A. Howley**
Texas Bar No.  24010115
700 Louisiana St., Suite 4545
Houston, Texas 77002
Telephone:  713-333-9125
Email:  tom@howley-law.com
Email:  eric@howley-law.com

-and-

**SPENCER FANE LLP**
M. Kevin Powers
State Bar No. 24041715
3040 Post Oak Blvd., Suite 1400
Houston, Texas 77056
Telephone: (713) 212-2638
Facsimile: (713) 963-0859
kpowers@spencerfane.com

**ATTORNEYS FOR WCW
HOUSTON PROPERTIES, LLC**

## CERTIFICATE OF SERVICE

On January 6, 2025, I served a true and correct copy of the foregoing through the court's ECF system to the service list below.

*/s/ Eric Terry*
Eric Terry

**Service List:**

William Choslovsky
Ginsberg Jacobs
300 S. Wacker Dr.
Chicago, IL 60606

Mark Curtis Taylor
Holland & Knight
100 Congress Ave
Suite 1800
Austin, TX 78701

Stephen W. Sather
Barron & Newburger, P.C.
7320 N. MoPac Expwy., Suite 400
Austin, Texas 78731